In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1776

KEISHA L. LEWIS,

*Plaintiff-Appellant,*

*v.*

INDIANA DEPARTMENT OF TRANSPORTATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:23-cv-01865-JMS-MJD — **Jane Magnus-Stinson**, *Judge.*

ARGUED JANUARY 30, 2026 — DECIDED APRIL 22, 2026

Before BRENNAN, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges*.

BRENNAN, *Chief Judge*. The Indiana Department of Transportation fired Keisha Lewis for poor performance and insubordination. Lewis, who suffers from a kidney condition, previously clashed with her supervisors about her remote-work accommodation, job responsibilities, and performance reviews. After her termination, Lewis sued the Department and certain individuals, alleging disability discrimination,

race discrimination, and retaliation in violation of the Rehabilitation Act, Title VII, and 42 U.S.C. § 1981. After Lewis voluntarily dismissed some counts, the district court granted summary judgment to the Department on those remaining. Because no reasonable jury could find for Lewis on any of her claims, we affirm.

**I**

Lewis worked for the Indiana Department of Transportation in the Real Estate Division from December 2014 until her termination on December 20, 2022. Her responsibilities included reviewing and approving federal relocation claim vouchers for assistance payments. The claim process went as follows: consultants helped people displaced by highway projects find replacement housing or business locations. Then, the consultants submitted paperwork to the Real Estate Division, and Lewis would approve and mail checks to the displaced persons.

Lewis's problems with the Department began in 2021. That year, the Director of Real Estate, William Geibel, conducted a job justification review. Lewis received a promotion and a raise. But she complained to Geibel that her raise was insufficient. Lewis, a black employee, received a 9 percent raise, yet a white colleague received a 12 percent raise. Geibel testified that the State Personnel Department sets pay rates. Per Geibel, those rates pre-determined the raises available for each employee, depending on base salary. The other employee's base salary was lower than Lewis's, so he received a higher percentage raise.

Additional difficulties arose concerning Lewis's remote-work accommodation. For context, in March 2020, the

Department staff began working out of the office due to COVID-19. Although the employees returned to the office by summer 2022, Lewis received a remote-work accommodation for health issues related to her kidney transplant and compromised immune system. Her accommodation also allowed her to meet her supervisors outside the downtown office to drop off the processed checks. After Lewis began working from home—and contrary to the directions of her supervisor, Julie Foreman—Lewis stopped processing checks for the Finance Department. She also emailed the Finance Operations Manager and said she would no longer assist with the relocation vouchers. Around this time, it was recommended that Foreman have daily virtual meetings with Lewis to monitor her work progress.

Lewis's supervisors soon stepped in. When Foreman found out that Lewis was refusing work, Foreman contacted Human Resources Director Janell Gurney. In her email, Foreman reported Lewis's refusal to assist with the vouchers and Lewis's backlog of 100-150 parcels. Foreman also described confronting Lewis about her accommodation because Lewis had posted about attending a high school football game on social media. Based on Gurney's advice, Foreman told Lewis that her failure to complete job duties was "insubordination" and Lewis needed to submit additional documentation for her remote-work accommodation. Foreman also informed Lewis that she was required "to perform [her job duties]," and failing to do so "[was] insubordination and w[ould] result in disciplinary action."

In response, Lewis brought several complaints. She initially emailed the State Personnel Department, claiming she was receiving "harassing phone calls from [Foreman]"

referencing her accommodation and staff complaints about her activities outside of work. To Lewis, she "had no other choice than file a complaint against … Foreman, for harassment and discrimination of [her] medical condition." Gurney told Lewis she no longer needed to provide further documentation about her accommodation or continue to come to the office to handle the checks. Lewis then filed a second internal complaint alleging disability discrimination, which was later dismissed by the State Personnel Department.

A few days later, Foreman emailed Geibel and Gurney to report "[a]nother instance of insubordination" by Lewis. Lewis's work logs seemed to overrepresent the hours worked for the work product created. Foreman also expressed her frustration with Lewis's activities that seemed inconsistent with "strict COVID precaution behavior," such as taking her kids to SkyZone and The Children's Museum. In the weeks before the email, Lewis had also been late to multiple meetings with Foreman, including once when she was 20 minutes late, even after taking two hours of personal time just before the meeting.

Matters escalated quickly. The day after Foreman's report, Lewis had her regular check-in phone call. Geibel, Foreman, and Lewis discussed Lewis's work logs as well as her withdrawal from participating in an upcoming "diversity inclusion week." Over the following days, Foreman directed Lewis to provide weekly data reports, which would detail her unfinished work. Lewis and Foreman then engaged in an email dispute about generating those reports. Foreman later forwarded the email thread to Gurney, claiming Lewis "was blatantly refusing to produce the [reports]." In response, Gurney instructed Foreman to begin documenting Lewis's

"inappropriate/egregious behavior," but told Foreman she could not write up Lewis because "[i]t would appear as retaliation."

Lewis did not provide a specific report and she told Geibel she did not have the time to do so. Geibel worked with another employee to obtain the information. The report showed Lewis had "over 400 parcels outstanding," including some of the Department's largest projects, putting it at risk of losing federal funding. At this point, Geibel recommended to the State Personnel Department that Lewis be fired. In December 2022, Lewis was terminated for "poor performance and insubordinate conduct."

Lewis then sued the Department, Geibel, and Foreman, bringing claims for disability discrimination and retaliation under § 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The court granted the parties' joint motion to dismiss against Foreman. Then, the defendants moved for summary judgment on the Title VII and Rehabilitation Act claims against the Department and the § 1981 claims against Geibel.

The district court agreed and concluded that no reasonable jury could find for Lewis on any of her claims. So, the court granted the defendants' motion for summary judgment. Lewis appeals.

## II

We review a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in the nonmoving party's favor. *Bourke v. Collins*, 142 F.4th 918, 921 (7th Cir. 2025). But an inference is "not reasonable if it is

directly contradicted by direct evidence provided at the summary judgment stage." *Downing v. Abbott Lab'ys*, 48 F.4th 793, 815 (7th Cir. 2022) (citation modified). Nor is a "conceivable inference necessarily reasonable." *Id.* (citation modified). The moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Lewis appeals summary judgment for the defendants on a number of her claims: disability discrimination and retaliation in violation of § 504 of the Rehabilitation Act, and racial discrimination and retaliation in violation of Title VII.

## A

Section 504 of the Rehabilitation Act requires employers receiving federal funds to reasonably accommodate their employees with disabilities. 29 U.S.C. § 794(a); *Bourke*, 142 F.4th at 921. To establish a violation of the Act, a plaintiff must show: (1) she was handicapped as defined by the Act; (2) she was "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) she was "denied the benefits of the program solely because of her handicap." *Royan v. Chi. St. Univ.*, 145 F.4th 681, 689 (7th Cir. 2025) (citation modified). Only the fourth requirement is at issue in this case.

## 1

Lewis claims the district court erroneously derived a sole-causation standard from the Rehabilitation Act's text, rather than using the but-for causation test provided by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* (ADA). To Lewis, because the court failed to consider other

but-for causes of Lewis's termination, it applied the wrong legal standard.

This is incorrect. Although the Rehabilitation Act "incorporates the liability standards of the [ADA]," *Bourke*, 142 F.4th at 921, it does not do so for causation standards. Instead, Congress opted for an elevated causation standard for disability-discrimination claims under the Rehabilitation Act. 29 U.S.C. § 794(a).

The ADA requires plaintiffs to show they were discriminated against "on the basis of" their disability. 42 U.S.C. § 12112(a). But under the Rehabilitation Act their discrimination must be "solely by reason of" their disability. 29 U.S.C. § 794(a). That means a plaintiff bringing a claim under the Rehabilitation Act must show sole causation, rather than but-for causation. *Royan*, 145 F.4th at 693.

We have consistently concluded that the Rehabilitation Act's sole-causation standard is "more stringent than the ADA's 'but for' inquiry." *Id.* (citing *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022); *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021)). This requirement "contrasts with the ADA, which requires only that the plaintiff's disability be *a* reason for the challenged action." *Conners*, 984 F.3d at 1260; *see also Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013) (citations omitted) ("Aside from the 'solely by reason of' standard of causation, which is unique to this statute and not present in the ADA … the Rehabilitation Act incorporates the standards applicable to Title I of the ADA.").

In *Royan*, this court held that a student who failed out of a doctoral program did not produce evidence from which a reasonable jury could find that she was dismissed solely because

of her disabilities. *Id.* The plaintiff argued that but for the disclosure of her illness, she would not have failed her clinical rotation and never have been placed on probation or assigned to the instructor who failed her, ultimately leading to her dismissal. *Id.* But she had failed her second and final clinical rotation, and there was no evidence her supervising instructor was aware of her disabilities when he failed her. *Id.* Thus, without evidence that her supervisor knew of her disability, no reasonable jury could conclude she was "dismissed … solely based on her disabilities." *Id.* at 694.

Several circuits share our view that § 504 has a stricter causation standard than the ADA's "but for" standard. *See, e.g., Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) ("To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion.") (citation omitted); *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013) (holding that § 504 requires proof that the "plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap") (citation omitted); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013) (determining that § 504's "causal standard" which requires the plaintiff "to show a denial of services solely by reason of disability" is even stricter than the ADA's "but for" standard) (citation modified). As the Fifth Circuit nicely summarized, "under the Rehabilitation Act, an employer is liable only if the discrimination occurred solely by reason of her or his disability, not when it is simply a motivating factor." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 586 (5th Cir. 2021) (citation modified).

Lewis's disability was not the sole cause of her termination. She had over 400 outstanding parcels to close out, which cost the Department over $150,000 to rectify. Lewis also does not dispute that Geibel recommended she be fired because of her deficient job performance and her insubordination. Lewis cannot show that her disability was the sole cause of her termination, so she has not established a disability-discrimination claim under the Rehabilitation Act.

**2**

Lewis argues the Department's post-hoc justification for her termination was pretextual. In support, she cites non-Rehabilitation Act and out-of-circuit cases. To her, an "employer's decision to assign additional duties and subject her to heightened scrutiny" constitutes "a pattern of antagonism," and therefore evidence of discriminatory intent. She submits the Department was looking for a reason to terminate her after she received her accommodation. This, she says, is sufficient evidence of pretext necessitating a trial.

But our inquiry into whether a discharge is pretextual turns on "whether the employer honestly believed the reason it has offered to explain the discharge." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 505 (7th Cir. 2017) (citation omitted). This "requires more than just faulty reasoning or mistaken judgment on the part of the employer." *Swain*, 41 F.4th at 900 (citation omitted). It requires a "lie, specifically a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 726 (7th Cir. 2008) (evaluating an employer retaliation claim under Title VII) (citation omitted). Yet, we are not a "super personnel department that second-guesses employers' business judgments." *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 915 (7th Cir. 2025) (citations omitted). "If a reasonable fact

finder would be compelled to believe" an employer's expla-
nation, then the employer "is entitled to summary judgment."
*Argyropoulos*, 539 F.3d at 736.

The Department had several legal justifications for
Lewis's firing, including her history of insubordination and
ineffective job performance. She contested her assigned duty
assignments, had a poor record of timely attendance at meet-
ings, made negative comments about Geibel to other employ-
ees, and refused a direct order from Geibel. Each is a valid
justification for adverse employment action. *See Bruno v.
Wells-Armstrong*, 93 F.4th 1049, 1055 (7th Cir. 2024) (conclud-
ing that the employer's stated reason for refusing to raise
salary was not pretextual when the employee had been insub-
ordinate); *Monroe*, 871 F.3d at 506–07 (holding that there was
no evidence of pretextual termination when an employee's
post-traumatic stress disorder "caused him … to be volatile
toward his subordinates"). Though "evidence of pretext does
not require but does permit an inference of unlawful motive,"
*Murphy*, 140 F. 4th at 915, the Department had consistent per-
formance-related reasons to terminate Lewis.

Further, Lewis's failure to contest these facts before the
district court means she waives this attempt on appeal. She
did not dispute key facts concerning her refusal to do more
work, her tendency to speak over Geibel in meetings, negative
comments she made about Geibel's ability to manage the Real
Estate Division, and the 400-parcel backlog at the time of her
discharge. An argument raised for the first time on appeal is
waived. *Bradley v. Village of University Park*, 59 F.4th 887, 897
(7th Cir. 2023).

To Lewis, waiver is not fatal to her claim because the dis-
trict court improperly credited testimony about the parcels

that was uncited in the summary judgment briefs. But the court was entitled "to consider uncited materials in the record" at the summary judgment stage. *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022); FED. R. CIV. P. 56(c)(3). And in civil cases, plain error review is "severely constricted because a civil litigant should be bound by his counsel's actions." *Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co., S.I.*, 168 F.4th 483, 490 (7th Cir. 2026) (citation modified). When an argument is affirmatively waived, like here, rather than forfeited, "we need not even consider" whether to apply plain error review. *Id.*

**B**

Next is Lewis's Rehabilitation Act retaliation claim. To prove such an allegation, an employee must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the two. *See Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023) (citation omitted). Our circuit precedent is inconsistent as to whether a plaintiff must show the protected activity was the but-for cause of the adverse action, *Brooks v. Avancez*, 39 F.4th 424, 440 (7th Cir. 2022), or whether it is enough to show "retaliatory intent played a part in [the] termination." *Fuller*, 84 F.4th at 691. We need not resolve this incongruity here because Lewis's claim fails under both standards.

Lewis argues Foreman's critical comments and report to the Human Resources Department show retaliatory intent. She claims Foreman was frustrated about her accommodation, citing their discussion over Lewis's attendance at the football game and taking her children to SkyZone and the

Children's Museum. But she neglects to mention Foreman's concerns about Lewis's deficient communication, poor attendance at meetings, and lack of transparency about her work product.

The Department had "legitimate non-retaliatory reasons" for terminating Lewis based on her insubordination and subpar work performance. *Id.* (citation modified). As with the claim of pretextual termination, the district court correctly found that Lewis did not show unlawful intent. Lewis's employer had concerns about her productivity—unrelated to her disability accommodation—which led to her termination. There was neither retaliatory intent nor was her poor productivity a protected activity. So, Lewis does not prevail on her retaliation claim.

## C

Last, we consider Lewis's allegations of racial discrimination and retaliation under Title VII.

### 1

At summary judgment, a district court evaluating a Title VII race discrimination claim asks, "whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race … caused the discharge or other adverse employment action." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (citation modified). Direct or circumstantial evidence will be considered "in a single pile and must be evaluated as a whole." *Id.*

One way to establish a Title VII racial discrimination claim is through the burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Igasaki*, 988 F.3d at 957.

But ultimately, a plaintiff need not prevail under *McDonnell Douglas*. Lewis needs only to present enough evidence to allow a reasonable jury to conclude in her favor. *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020).

The district court correctly found that Lewis "provide[d] no supporting details as to whether [a white employee of the Department] was a comparator in job title, job duties, or other contributing factors to the disparity." Her racial discrimination claim hinges on a pay-raise disparity: she received a 9 percent raise, yet a white employee received a 12 percent raise. But she does not rebut or even acknowledge that the white employee received a higher raise because his salary was lower than hers before and after the raise.

Further, Lewis waived this argument by not developing an argument on appeal that engages with the district court's reasoning. *Bradley*, 59 F.4th at 897; *see also Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) ("We have made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority are waived."). It is not enough to preserve an issue by presenting an argument in general terms. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). The district court found that Lewis waived her Title VII racial discrimination claim. Her argument "almost exclusively focuse[d]" on the pay-raise disparity rather than any "meaningful analysis regarding discrimination on the basis of her race itself."

On appeal, Lewis argues she offered evidence that Geibel "harbored animosity toward her because of her race." To Lewis, Geibel considered her complaint that he had not paid her fairly because of her race as insubordinate. And she asserts Geibel's long-term efforts to seek Lewis's termination,

coupled with the allegedly pretextual justifications for her termination, also show racial discrimination sufficient for jury consideration.

Lewis's contentions fail to engage with the district court's reasoning, and her arguments on appeal remain "underdeveloped, conclusory, or unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). "[E]vidence that similarly situated non-African-American employees were treated more favorably" could have supported Lewis's claim, and would have been essential under the *McDonnell Douglas* method. *See*, *e.g.*, *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018). She provided no such evidence. Accordingly, the district court correctly granted summary judgment on her Title VII racial discrimination claim.

**2**

Lewis's Title VII retaliation claim does not succeed for similar reasons. A plaintiff bringing such a claim must show that "the record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge[.]" *Igasaki*, 988 F.3d at 959. Lewis does not do so. She claims Geibel "harbored animosity toward her because of her race" leading him to "consider[] her [pay-raise] complaint … as insubordinate." But as the district court found, Geibel advocated for Lewis's promotion and pay raise. That fact, along with the lack of other evidence, leads to the conclusion that Geibel acted without discriminatory or retaliatory motives. Lewis also did not raise any material dispute that her supervisor's beliefs about her insubordination and ineffectiveness were insincere.

She cannot show "by a preponderance of the evidence" that her insubordination and ineffectiveness were "a pretext for discrimination." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). Lewis did not raise a material dispute about Geibel's beliefs. No reasonable jury could conclude that her complaint was causally related to her termination. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."); *see also Igasaki*, 988 F.3d at 959 ("two-month gap between [an employee]'s protected activities and his termination cannot show retaliation on its own").

## III

Lewis's disability did not cause her termination, and she did not raise any genuine issues of material fact as to whether the Department's decision to terminate her was pretextual. Nor could a reasonable jury find a causal connection between her remote-work accommodation and the cited performance issues that led to her termination. Lewis also waived her discrimination claim, and she did not materially dispute her supervisors' sincere belief about her insubordination and ineffectiveness. For these reasons, the district court properly granted the defendants' motion for summary judgment in all respects.

AFFIRMED